UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| OneBeacon America Ins. Co., | ) | Case No. 5:09CV2979 |
| | ) | |
| Plaintiff, | ) | JUDGE JOHN R. ADAMS |
| | ) | |
| vs. | ) | |
| | ) | [Resolving Docs. 22, 23] |
| American Motorists Ins. Co., | ) | |
| | ) | |
| | ) | MEMORANDUM OF OPINION |
| Defendant. | ) | |

This matter is before the Court upon cross motions for summary judgment filed by Plaintiff OneBeacon America Insurance Company ("OneBeacon") and Defendant American Motorists Insurance Company ("AMICO"). For the reasons that follow, AMICO's motion (Doc. 22) is GRANTED, and OneBeacon's motion (Doc. 23) is DENIED.

**I.   FACTS**

There are no disputed facts that are relevant to the disposition of the motions currently pending before the Court. Rather, the parties present a pure issue of law for the Court's consideration.

As background, both OneBeacon and AMICO issued insurance policies to Goodrich Corporation. Well more than a decade ago, Goodrich sought coverage from these entities and numerous other insurers for its environmental liabilities related to Calvert City, Kentucky. In 1995, AMICO settled with Goodrich and was released from any and all future liability. OneBeacon chose not to settle with Goodrich and the matter ultimately proceeded to trial. A

1


jury awarded Goodrich $42,000,000 in compensatory damages, a little over $20,000,000 in interest, and over $12,000,000 in attorney fees. Following the verdict, OneBeacon sought settlement credits in the amount of Goodrich's prior settlements with other insurers. The state court declined to award any settlement credits. However, as OneBeacon was an excess insurer, the compensatory damages were reduced by $20,000,000 – the amount of primary coverage that was available as determined by the state court.

On December 23, 2009, AMICO removed OneBeacon's complaint to this Court from Summit County Court of Common Pleas. In the complaint, OneBeacon seeks a declaration that it has a right of contribution against AMICO. Specifically, OneBeacon contends that AMICO has not paid its pro rata share of the jury verdict. On July 30, 2010, both parties moved for summary judgment. The matter has been fully briefed and the Court now resolves both motions.

## II. LEGAL STANDARD

Summary judgment is proper if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R. Civ.P. 56(c)(2). A fact is material only if its resolution will affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).

The Supreme Court has stated that the moving party always bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has carried its burden, the responsibility then shifts to the nonmoving party to show that there is, in fact, a

genuine issue of material fact for trial. The Supreme Court has directed that the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Industrial Co. v. Zenith Radio,* 475 U.S. 574, 586 (1986). The nonmoving party "must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 587 (quoting former Fed.R. Civ.P. 56(e)). In evaluating the nonmovant's proffer, a court must of course draw from the evidence all justifiable inferences in favor of the nonmovant. *Anderson,* 477 U.S. at 255. Accordingly, summary judgment analysis examines whether a trial is necessary and is therefore appropriate when there are no genuine issues of material fact. *Id.* at 250.

### III.    LEGAL ANALYSIS

The parties present one issue of law for this Court to decide: does a non-settling insurer have a right of contribution against a settling insurer? Under the facts presented herein, the Court answers that question in the negative.

Initially, the Court notes that there appears to be some disagreement between the parties over what precisely must be compared herein. OneBeacon appears to argue that both it and AMICO are excess insurers. OneBeacon's own allegations, however, indicate that "the policy limits of AMICO's settled policies acknowledged by Goodrich at or below the $20 million level of attachment for the [OneBeacon] policies total at least $55 million." Doc. 23-1 at 4. In other words, while AMICO's policies may have contained excess insurance language, there does not appear to be any dispute that OneBeacon's insurance was always in excess to that provided by AMICO, regardless of label. There is nothing in the record before this Court to suggest that

AMICO and OneBeacon were equally liable for the initial $55 million in coverage provided by AMICO.[1]

Two colleagues have addressed the issue presented herein and reached results similar to the one herein. In finding no right of contribution, a colleague noted as follows:

> While Ohio law does not provide this court with as many reasons as the Third Circuit possessed in *Koppers* to bar contribution actions by non-settling insurers against settling insurers, the reasoning in *Koppers* applies with full force. Allowing contribution actions by Century, McKinley, Continental, Columbia and Allstate undermines the finality of the settlement between Colony, RPM, Bondex, Republic, McKinley and Columbia. And allowing contribution actions by those parties is not the only way for those parties to protect themselves if RPM, Bondex and Republic chose to settle their claims against Colony for less than the coverage limit in the Cardinal-issued policies. *See Koppers Co.*, 98 F.3d at 1452-53. [The excess insurers] are still protected, to the same degree they were before, by the terms of their insurance policy contracts with [the policyholders]. [The excess insurers] are also able to assert that the settlement from Colony should reduce whatever award is made against them, to ensure that the risk of settling too low remains where it should-on [the policyholders]. *Id.* at 1455.

*Bondex Int'l, Inc. v. Harford Accident and Indem. Co.*, 2007 WL 405938, at *4 (N.D.Ohio Feb. 1, 2007); *see also GenCorp, Inc. v. AIU Ins. Co.*, 297 F.Supp.2d 995 (N.D.Ohio 2003).

The logic espoused in *Bondex* applies with even more force in this action. OneBeacon has previously sought settlement credits related to AMICO. The underlying rationale for receipt of those credits is identical to a claim of contribution – OneBeacon sought a determination that failure to apply settlement credits would result in an unequal distribution of the common liability of the insurers. OneBeacon now relies upon that same theory to seek contribution. Both the state trial court and state appellate court rejected application of settlement credits. In rejecting this request, the appellate court noted that the damages awarded by the jury did not contain a breakdown specifying precisely what was included in those damages. As a result, the trial court

---

[1] Ultimately, this fact played no role in the Court's determination regarding the right of contribution.

concluded that the excess insurers had failed to demonstrate that the prior settlements covered the "same damages" that were awarded by the jury.

> The record fails to even suggest that any of Goodrich's negotiated settlements with its other insurers was intended to merely compensate Goodrich for its past cleanup costs at Calvert City. In fact, although there is nothing that breaks down or quantifies the components of each insurer's monetary settlement with Goodrich, the insurers paid for a release from liability to Goodrich for a much wider array of claims than simply EDC groundwater remediation at Calvert City. Goodrich released the settling insurers from liability for the cleanup of other contaminants and from liability for claims for personal injury and other property damage. Commercial Union and the London Market Insurers oversimplify this issue to suggest that the trial court could just deduct the total settlement dollars ($58.5 million) from the jury's damage award ($42 million) to completely offset the damages awarded in this case.
>
> Moreover, the dollar amounts of insurers' settlements were not likely confined to compensating Goodrich for its property damage or other potential liability claims. In *Fidelholtz v. Peller* (1998), 81 Ohio St.3d 197, 201, 690 N.E.2d 502, the Ohio Supreme Court stressed that defendants settle for many reasons in addition to compensating the plaintiff for its injury "such as the avoidance of bad publicity and litigation costs, the possibility of an adverse verdict, and the maintenance of favorable commercial relationships."
>
> The record does not quantify the total costs of this litigation, but litigation costs in this case undoubtedly have been phenomenal. The settling insurers were able put an end to litigation costs of their own, as well as potential liability for Goodrich's attorney fees and costs. Goodrich has spent nearly 20 years seeking coverage from its insurers for its environmental cleanup costs at its Calvert City site. The parties have been involved in this litigation for nearly a decade, and this case does not necessarily end with this appeal, as one or more of the parties may pursue an appeal to the Ohio Supreme Court.
>
> Moreover, in addition to the damages found by the jury, the trial court awarded Goodrich over $22 million in attorney fees and litigation costs, which does not account for any of the fees and costs associated with this appeal, nor does it account for the insurers' defense costs. Goodrich was also awarded over $20 million in prejudgment interest. The trial court also made a declaration that Goodrich will likely incur future liability for cleanup costs at Calvert City and that it has a right to be indemnified by Commercial Union and the London Market Insurers. The settling insurers purchased a release from all of this potential liability.

*Goodrich Corp. v. Commercial Union Ins. Co.*, 2008 WL 2581579, at *8-9 (Ohio App. Ct. June 30, 2008).[2]

The instant action does little more than take a second bite at the apple. Despite being unable to demonstrate that the jury award and AMICO's coverage are one in the same during state court litigation, OneBeacon now asks that this Court draw that exact conclusion. The Court declines to draw such conclusion.

In addition to the reasoning stated above, AMICO's motion for summary judgment is also granted for a more fundamental reason. Assuming *arguendo* that OneBeacon has the right to seek contribution, this Court would decline to award such contribution under the facts herein. There is no dispute that OneBeacon was found to have acted in bad faith in the state court litigation.

> Construing this evidence in favor of Commercial Union, the circumstances under which it denied coverage to Goodrich did not include any investigation of the Calvert City claims. Although Commercial Union purported to have defenses to Goodrich's claims, it had not reviewed any of the relevant facts to determine what Goodrich's claims were. From the evidence presented at trial, reasonable minds could have concluded that Commercial Union refused to indemnify Goodrich for its Calvert City cleanup costs under circumstances that did not provide reasonable justification.

*Id.* at *4. Based upon this finding, the appellate court upheld the jury's finding of bad faith and the trial court's award of attorney fees.

In the instant matter, the parties agree that contribution is an equitable remedy. Based upon OneBeacon's bad faith, the jury verdict was increased to include attorney fees. OneBeacon now seeks to foist the results of its bad faith conduct onto AMICO. Equity precludes such a result. Furthermore, the Court cannot help but note that a significant amount of the underlying jury verdict consisted of attorney fees and both prejudgment and postjudgment interest – all

---

[2] OneBeacon is the successor-in-interest to Commercial Union.

6

amounts that were exponentially increased by OneBeacon's bad faith.  As such, even if this Court were to find that OneBeacon *could* seek contribution, it would not award contribution under the undisputed facts.

Finally, the Court finds no merit in OneBeacon's position that *Goodyear Tire & Rubber Co. v. Aetna Cas. & Sur. Co.*, 95 Ohio St.3d 512 (2002) and *Pennsylvania Gen. Ins. Co. v. Park-Ohio Industries,* 126 Ohio St.3d 98 (2010) compel a different result.  *Goodyear* established an "all sums" approach for Ohio.  Under such an approach, an insured may choose a primary insurer from a group of insurers that share liability and recover its entire loss from that insurer.  The insurer, in turn, would then bear the burden of obtaining contribution from other insurers.  *Goodyear* does not speak in any manner to the issue of whether a non-settling insurer may seek contribution from a settling insurer.  Likewise*, Park-Ohio* resolved the issue over whether non-targeted insurers could use an untimely notice of claims as a defense to contribution.  There is nothing in *Park-Ohio* that would establish a rule permitting a contribution action such as the one OneBeacon seeks to pursue herein.  Accordingly, the Ohio law relied upon by OneBeacon is not persuasive.

In summary, this is an outgrowth of litigation that was commenced nearly 25 years ago. AMICO first settled with Goodrich more than 15 years ago.  After engaging in bad faith, OneBeacon received a sizable jury verdict against it.  This complaint serves as nothing more than an effort to evade the original trial court's determination that settlement credits were inappropriate.  The facts underlying that decision, as detailed above, dictate a conclusion that equitable contribution is also improper.  Accordingly, AMICO's motion for summary judgment is well taken.

## IV. CONCLUSION

Based upon the reasons stated herein, AMICO's motion for summary judgment is GRANTED, and OneBeacon's motion for summary judgment is DENIED. OneBeacon does not have the right to seek contribution from AMICO. Furthermore, if such a right existed, equity would compel a finding that contribution is inappropriate. Judgment is hereby entered in favor of AMICO on OneBeacon's declaratory judgment action.

IT IS SO ORDERED.


Date: <u>November 2, 2010</u>           <u>*/s/ John R. Adams*</u>
                                                 JUDGE JOHN R. ADAMS
                                                 United States District Court